1

2                                                                    O

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   CAROL LEE JOHNSON,                 )    NO. EDCV 12-00435-MAN
                                         )
12              Plaintiff,               )
                                         )    MEMORANDUM OPINION
13        v.                             )
                                         )    AND ORDER
14   CAROLYN W. COLVIN,[1]               )
     Commissioner of Social Security,    )
15                                       )
                Defendant.               )
16   _____)

17

18        Plaintiff filed a Complaint on April 4, 2012, seeking review of the

19   denial of plaintiff's application for a period of disability, disability

20   insurance benefits ("DIB"), and supplemental security income benefits

21   ("SSI").  On May 15, 2012, the parties consented, pursuant to 28 U.S.C.

22   § 636(c), to proceed before the undersigned United States Magistrate

23   Judge.  The parties filed a Joint Stipulation on February 8, 2013, in

24   which:  plaintiff seeks an order reversing the Commissioner's decision

25

26   _____

27        [1]    Carolyn W. Colvin became the Acting Commissioner of the Social
     Security Administration on February 14, 2013, and is substituted in
28   place of former Commissioner Michael J. Astrue as the defendant in this
     action.  (*See* Fed. R. Civ. P. 25(d).)

1  and remanding this case for the payment of benefits or, alternatively,

2  for further administrative proceedings; and the Commissioner requests

3  that his decision be affirmed or, alternatively, remanded for further

4  administrative proceedings.

5

6                  **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

7

8       On August 25, 2009, plaintiff filed an application for a period of

9  disability and DIB; and on August 31, 2009, plaintiff filed an

10  application for SSI. (Administrative Record ("A.R.") 33.) Plaintiff

11  claims to have been disabled since July 10, 2008 (*id.*), due to: "back

12  and neck pain[;] pain in the shoulders, elbows, wrists, hands, and

13  hips[;] headaches[;] diarrhea[;] and mental problems" (A.R. 37).

14  Plaintiff has past relevant work experience as an assistant manager

15  (mobile home park), waitress, and cashier/checker. (A.R. 39-40.)

16

17       After the Commissioner denied plaintiff's claims initially and upon

18  reconsideration (A.R. 33, 117-20, 128-33), plaintiff requested a hearing

19  (A.R. 135). On February 9, 2011, plaintiff, who was represented by

20  counsel, appeared and testified at a hearing before Administrative Law

21  Judge Milan M. Dostal (the "ALJ"). (A.R. 33, 75-112.) Vocational

22  expert Susan Allison also testified. (*Id.*) On March 4, 2011, the ALJ

23  denied plaintiff's claims (A.R. 33-40), and the Appeals Council

24  subsequently denied plaintiff's request for review of the ALJ's decision

25  (A.R. 5-7). That decision is now at issue in this action.

26  ///

27  ///

28  ///

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2012, and has not engaged in substantial gainful activity since July 10, 2008, the alleged onset date of her disability.  (A.R. 35.)  The ALJ determined that plaintiff has the severe impairments of:  "moderate degenerative joint and disc disease of the cervical and lumbar spine; osteoporosis; mild bilateral epicondylitis; diarrhea; hemorrhoids; and sleep disorder." (*Id.*)  The ALJ also determined that "[plaintiff]'s medically determinable mental impairments of depression, anxiety, panic attacks and stress, considered singly and in combination, do not cause more than minimal limitation in [plaintiff]'s ability to perform basic mental work activities and are therefore nonsevere." (*Id.*) After considering plaintiff's impairments, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (A.R. 36.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (A.R. 36.) Specifically, the ALJ found that:

[plaintiff] can lift/carry 20 pounds occasionally and 10 pounds frequently; stand, sit and walk up to six hours each in an eight-hour workday; occasionally climb, balance, stoop,

1    kneel, crouch and crawl; avoid climbing ladders, ropes and
2    scaffolds; avoid working above shoulder height bilaterally;
3    and avoid working at unprotected heights and [with] hazardous
4    moving machinery. [Plaintiff] has pain generally in the
5    joints, head, neck, back, shoulders, elbows, wrists, hands,
6    hips and abdomen and she has hypertension, osteoporosis,
7    diarrhea, sleep disorder and hemorrhoids, with pain and
8    conditions of moderate nature [that] would have a moderate
9    affect on her ability to perform back work activities;
10   however, these conditions are or can be controlled by
11   appropriate medications without significant adverse side
12   effects. She also has some psychiatric illnesses such as
13   depression, anxiety, panic attacks and stress, which would be
14   of a slight nature and would have a slight affect on her
15   ability to perform basic work activities or those conditions
16   are or can be controlled by appropriate medications without
17   significant adverse side effects.

18

19   (A.R. 36-37.)

20

21       The ALJ found that plaintiff's past relevant work "do[es] not
22   require the performance of work-related activities precluded by
23   [plaintiff's RFC]." (A.R. 39.) Accordingly, the ALJ concluded that
24   plaintiff has not been under a disability, as defined in the Social
25   Security Act, from July 10, 2008, through the date of the ALJ's
26   decision. (A.R. 40.)
27   ///
28   ///

4

1

2

**STANDARD OF REVIEW**

3      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

4  decision to determine whether it is free from legal error and supported

5  by substantial evidence in the record as a whole. Orn v. Astrue, 495

6  F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant

7  evidence as a reasonable mind might accept as adequate to support a

8  conclusion.'" *Id.* (citation omitted). The "evidence must be more than

9  a mere scintilla but not necessarily a preponderance." Connett v.

10  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the

11  record can constitute substantial evidence, only those 'reasonably drawn

12  from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063,

13  1066 (9th Cir. 2006)(citation omitted).

14

15      Although this Court cannot substitute its discretion for that of

16  the Commissioner, the Court nonetheless must review the record as a

17  whole, "weighing both the evidence that supports and the evidence that

18  detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of

19  Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

20  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is

21  responsible for determining credibility, resolving conflicts in medical

22  testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

23  1035, 1039 (9th Cir. 1995).

24

25      The Court will uphold the Commissioner's decision when the evidence

26  is susceptible to more than one rational interpretation. Burch v.

27  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may

28  review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d
at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse
the Commissioner's decision if it is based on harmless error, which
exists only when it is "clear from the record that an ALJ's error was
'inconsequential to the ultimate nondisability determination.'" <u>Robbins</u>
<u>v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v.</u>
<u>Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d
at 679.

**DISCUSSION**

Plaintiff claims the ALJ erred by not considering
properly plaintiff's subjective symptom testimony. (Joint Stipulation
("Joint Stip.") at 4-10, 21-25.)

**I.   <u>The ALJ Failed To Provide Clear And Convincing Reasons</u>**
**<u>For Finding Plaintiff's Subjective Symptom Testimony To</u>**
**<u>Be Not Credible</u>.**

Once a disability claimant produces objective medical evidence of
an underlying impairment that is reasonably likely to be the source of
claimant's subjective symptom(s), all subjective testimony as to the
severity of the symptom(s) must be considered. <u>Moisa v. Barnhart</u>, 367
F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346
(9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a)
(explaining how pain and other symptoms are evaluated). "[U]nless an
ALJ makes a finding of malingering based on affirmative evidence
thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

An ALJ may not rely on a claimant's daily activities to support an adverse credibility determination when those activities do not: (1) contradict claimant's other testimony; or (2) meet the threshold for transferable work skills. See Orn, 495 F.3d at 639. With respect to the second ground, the Ninth Circuit has noted that "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting.'" Id. (citation omitted). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).

At the February 9, 2011 Administrative Hearing, plaintiff testified that she has: "bone degeneration in [her] neck]"; "arthritis in [her] entire back"; scoliosis; a steel rod, occupying "the entire

7

length of [her] left femur"; migraines; chronic diarrhea; depression; and panic attacks two to three times a week.  (A.R. 85-86, 97.) Plaintiff testified that, since 2007, she has been taking care of her elderly mother, who was 82 years old at the time of the Administrative Hearing.  (A.R. 87-88.)  Specifically, plaintiff testified that she: "fix[es] her meals"; "do[es] her laundry"; and "cleans the house," because her mother "can't do anything" -- "[s]he can't even carry a cup of tea."  (A.R. 87.)  Plaintiff testified, however, that she does not bathe or dress her mother and is not capable of lifting her mother if she were to fall.  (A.R. 92-93.)  When plaintiff does the laundry, she testified that it "takes [her] pretty much all day."  (A.R. 93.)  When plaintiff vacuums, she testified that it "takes [her] all day long, and sometimes [she] ha[s] to do it in two days."  (A.R. 94.) Plaintiff testified that she can vacuum for 30 to 45 minutes "at the very most" before she needs to rest her back.  (*Id.*)  Plaintiff further testified that when she rests, she generally rests for "20 minutes . . . 'cause [she] tr[ies] to get [the vacuuming] done."  (*Id.*)  Plaintiff testified that she shops for groceries and can pick up a five-pound bag of potatoes, but she cannot pick up a gallon of milk (just over eight pounds).  (A.R. 95.)  Plaintiff stated that she does not go out with her friends, because "[she] do[es]n't like to leave [her] mo[ther] alone, 'cause [her mother] falls a lot."  (A.R. 88.)

In addition to taking care of her mother, plaintiff also testified that she takes care of her dog and cat.  (A.R. 90.)  Specifically, in addition to presumably feeding her animals, plaintiff testified that she opens the door a few times a day so that the dog can go outside. Plaintiff testified, however, that she does not walk her dog.  (A.R. 90,

97.)  With respect to sitting and standing, plaintiff testified that she can sit for 45 minutes before she needs to change positions and can stand for one hour before needing to change positions.[2] (A.R. 96-97.) Plaintiff testified that she is depressed, "cr[ies] a lot," and has two to three panic attacks a week.  (A.R. 97-98.)  To treat her panic attacks, plaintiff takes a Xanax and "lay[s] down." (A.R. 97.)

        As noted *supra*, the ALJ found that plaintiff has the severe impairments of:  "moderate degenerative joint and disc disease of the cervical and lumbar spine; osteoporosis; mild bilateral epicondylitis; diarrhea; hemorrhoids; and sleep disorder."  (A.R. 35.)  The ALJ also found that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 37.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for discrediting plaintiff's subjective complaints must be clear and convincing.

        In his decision, the ALJ found that "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of [plaintiff]'s alleged symptoms are not credible to the extent they are inconsistent with [his RFC assessment for plaintiff]."  (*Id.*) Specifically, the ALJ found plaintiff to be not credible, because: (1) the medical evidence does not support plaintiff's allegations of totally disabling limitations; and (2) plaintiff's daily activities "are inconsistent with her complaints of totally disabling physical and

---

        [2]    In her Disability Report, plaintiff indicated that she is limited in her ability to stand because of the "pain [she experiences and] the metal rod [in her leg]." (A.R. 177.)

mental impairments." (A.R. 38-39.)

With respect to the ALJ's first ground, even assuming *arguendo* that the medical evidence did not corroborate the degree of plaintiff's allegations of disabling limitations, this factor cannot form the sole basis for discounting plaintiff's subjective symptom testimony. <u>Burch</u>, 400 F.3d at 681; *see* <u>Bunnell</u>, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simple because [plaintiff] fails to produce evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, because the ALJ's first ground cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's credibility determination rises or falls with the ALJ's second ground for discrediting plaintiff.

The ALJ's second ground for finding plaintiff to be not credible -- *to wit*, that plaintiff's daily activities are inconsistent with her complaints of "totally disabling physical and mental impairments" -- is unavailing. In his decision, the ALJ states the following:

At the hearing, [plaintiff] testified that she had moved from Colorado, specifically, to take care of her 82-year old mother. Since 2007, she testified that she did everything for her, she fixed her meals, did her laundry and cleaned the house. [Plaintiff] also takes care of her dog and cat. [Plaintiff] testified she was capable of driving and maintains a drivers' license.

10

(A.R. 39.)   Critically, however, the ALJ fails to identify *how* plaintiff's minimal daily activities are inconsistent with her allegedly disabling limitations, particularly her alleged sitting, standing, and lifting limitations.   This constitutes error.

While the Commissioner cites, *inter alia*, <u>Rollins v. Massanri</u>, 261 F.3d 853, 857 (9th Cir. 2001), to support her argument that caring for others and performing household chores, including shopping, undermines a claimant's disability claim, <u>Rollins</u> is distinguishable from the present case. (Joint Stip. at 20.) In <u>Rollins</u>, the ALJ "pointed out ways in which Rollins' claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week, and so forth."   261 F.3d at 857.   In her daily activities questionnaire, for example, "Rollins stated that she attended to 'all of [her] children's needs; meals, bathing, emotional, discipline, etc.' because her husband worked six days a week, usually from early in the morning until 10 p.m."   *Id.*   Rollins also stated, in the same questionnaire, that "she left the house 'daily' to go to places such as her son's school, taekwondo lessons and soccer gamers, doctor's appointments, and the grocery store."   *Id.*

In this case, while plaintiff testified that she takes care of her mother by preparing meals, going to the grocery store, and performing minimal household chores (albeit with rests), plaintiff also testified that she does not bathe or dress her mother and could not lift her mother if she were to fall.   In addition, although plaintiff testified

1   that she takes care of her cat and dog, she also testified that she does

2   not walk her dog and, instead, opens the door a few times a day to let

3   him go in and out of the house.   In fact, plaintiff indicated in her

4   Disability Report - Appeal that taking care of her animals "is almost

5   too much for [her] to do."   (A.R. 196.)   Further, while plaintiff

6   testified that she can drive, she also indicated in her Disability

7   Report - Appeal that her "neck and back are continual[l]y getting

8   worse[,] . . . [and i]t is getting to the point that [she] can hardly

9   drive [her] car any[]more . . . ."   (A.R. 190.)   Clearly, plaintiff's

10  activities  in  this  case  are  distinguishable  from  the  claimant's

11  activities in Rollins.

12

13         Moreover, the ALJ did not explain how plaintiff's ability to

14  perform  the  above-noted  activities  translates  into  the  ability  to

15  perform full-time work.   See Vertigan v. Halter, 260 F.3d 1044, 1050

16  (9th Cir. 2001)(noting that the "mere fact that a plaintiff has carried

17  on certain daily activities, such as grocery shopping, driving a car, or

18  limited walking for exercise, does not in any way detract from her

19  credibility as to her overall disability").   "The Social Security Act

20  does not require that claimants be utterly incapacitated to be eligible

21  for benefits, and many home activities may not be easily transferable to

22  a work environment where it might be impossible to rest periodically or

23  take medication."   Smolen v. Chater, 80 F.3d 1273, 1283 n.7 (9th Cir.

24  1996).

25

26         Accordingly, because the ALJ failed to articulate how plaintiff's

27  daily activities are at odds with her subjective symptom testimony, the

28  ALJ's  reasoning  cannot  constitute  a  clear  and  convincing  reason  for

12

rejecting plaintiff's credibility.  Thus, the ALJ's adverse credibility determination constitutes reversible error.[3]

## II.  Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned error.  *See* Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)(ordering remand so that the ALJ could articulate specific and appropriate findings, if any existed, for rejecting the claimant's subjective pain testimony).  On remand, the ALJ must revisit plaintiff's testimony and must either credit plaintiff's

---

[3]     While the Commissioner now offers other reasons to explain the ALJ's credibility determination, the Court cannot entertain these post hoc rationalizations.  *See, e.g.,* Connett, 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

1   testimony *or* give clear and convincing reasons why plaintiff's testimony
2   is not credible.    After so doing, the ALJ may need to reassess
3   plaintiff's RFC, in which case additional testimony from a vocational
4   expert likely will be needed to determine what work, if any, plaintiff
5   can perform.[4]

**CONCLUSION**

9        Accordingly, for the reasons stated above, IT IS ORDERED that the
10  decision of the Commissioner is REVERSED, and this case is REMANDED for
11  further proceedings consistent with this Memorandum Opinion and Order.

13       IT IS FURTHER ORDERED that the Clerk of the Court shall serve
14  copies of this Memorandum Opinion and Order and the Judgment on counsel
15  for plaintiff and for defendant.

17       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

19  DATED:   July 1, 2013

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

---

24      [4]   Although plaintiff does not challenge the ALJ's finding that
her mental impairments are not severe, on remand the ALJ should
"consider the combined effect of *all* of [plaintiff]'s impairments on her
ability to function, without regard to whether each alone was
sufficiently severe." Smolen, 80 F.3d at 1290 (emphasis added); *see* 20
C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (noting that "[w]e will consider
all of your medically determinable impairments . . . , including your
medically determinable impairments that are not 'severe,' . . . when we
assess your residual functional capacity").

14